## Nagle, Appellant, *v*. Pennsylvania Railroad Company.

*Negligence—Railroads—"Stop, look and listen"—Grade crossing— Contributory negligence—Nonsuit.*

In an action against a railroad company to recover damages for injuries to a cab at a grade crossing, a nonsuit is properly entered, where the evidence shows that the plaintiff's driver stopped at a point twenty or twenty-five feet from the crossing and looked and listened, that he then proceeded without again stopping, looking or listening to the track where he was struck; and that there was no embankment, and no standing cars nor obstructions nor anything to prevent him from seeing or hearing the train which struck him, if he had used proper precautions.

Argued March 8, 1910. Appeal, No. 30, March T., 1910, by plaintiff, from order of C. P. Luzerne Co., Oct. T., 1904, No. 1,291, refusing to take off nonsuit in case of C. L. Nagle v. Pennsylvania Railroad Company. Before RICE, P. J., HENDERSON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Trespass to recover damages for injuries to a cab. Before LYNCH, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was order refusing to take off nonsuit.

*Thomas F. Farrell,* with him *S. J. Strauss,* for appellant.—The line of cases by which the case at bar is ruled, is exemplified by the following which in their facts are more or less similar to those in our case: Penna. R. R. Co. v. Ackerman, 74 Pa. 265; McNeal v. Ry. Co., 131 Pa. 184; Ellis v. R. R. Co., 138 Pa. 506; Neiman v. D. & H. Canal Co., 149 Pa. 92; Ely v. Ry. Co., 158 Pa. 233; Hoffmeister v. R. R. Co., 160 Pa. 568; Arnold v. R. R. Co., 161 Pa. 1; Davidson v. Ry. Co., 171 Pa. 522; Seifred v. R. R. Co., 206 Pa. 399; Cromley v. R. R. Co., 208 Pa. 445; Armstrong v. R. R. Co., 212 Pa. 228.

*J. B. Woodward,* with him *F. W. Wheaton,* for appellee, cited: Gangawer v. R. R. Co., 168 Pa. 265; Moose Brew. Co. v. R. R. Co., 36 Pa. Superior Ct. 549.

Opinion by Head, J., July 20, 1910:

About an hour or two after midnight in the early part of October an employee of the plaintiff undertook to drive his employer's cab across a grade crossing of the defendant railroad company, known as the Barney street crossing, in south Wilkes-Barre. He had been in the same service for a period of some months and was quite familiar with the crossing, indeed, had gone over it but a short time before on the same night, as we understand the testimony. On his return trip he approached the railroad from the south. There was an electric street light just at the point where the highway reached the railroad tracks. There were three tracks. Having crossed two in safety, he was struck while on the third by an engine pulling a train of freight cars moving, as he says, at the rate of from twenty to thirty miles an hour. The driver of the cab escaped with slight injuries, but this action is brought by the plaintiff for the damage done to his property.

Taking the estimate of the driver as to the rate of speed at which the train was traveling, no negligence could be imputed to the defendant on that account. The driver admitted that he heard, or thought he heard the engine bell ringing just before he stopped, which he testifies he did at a point from fifteen to twenty-five feet south of the track. He says that he then saw or heard nothing to indicate the approach of a train. He then declares that he did not stop again, and that he did not listen any further, but assuming that the crossing was safe, he drove on to the track and his cab was immediately struck as he testifies. It is true that he denies that he heard any warning whistle, and it is on the presumed truth of the inference therefrom that no whistle was blown that the alleged negligence of the defendant company, if such there was, must rest.

Assuming, however, for the purpose of this case, that there was evidence to go to the jury to warrant a finding of such negligence, the learned trial court entered a compulsory nonsuit which he afterwards refused to take off, and this is the sole error assigned. The ground of the nonsuit was the contributory negligence of the plaintiff's employee. The conclusion that he was guilty of contributory negligence is not based on testimony given by the defendant, nor does it result merely from some of the testimony of the plaintiff's single witness to the occurrence where the opposite inference might be drawn from other portions of his testimony. As to the facts upon which the conclusion rests, his testimony is clear and plain, and is not contradicted either by himself or by any other witness.

The witness declares that from the point at which he stopped before moving on to the tracks he could see in daylight, in the direction from which the train came, a distance "of fifty or 100 yards or something like that." The highway on which he was traveling contained in itself no elements of danger, such as embankments, unguarded bridge, or other like thing to require his attention.

It was not incumbered with the traffic of passing vehicles. It does not appear that any other train on any of the other railroad tracks was in the vicinity so as to lead to any confusion of mind on his part as to the sights or sounds of which his senses, if alert, must have warned him.  From the point where he stopped clear on to the point on the track where he was struck the view was open and unobstructed.  If a freight train was approaching so near that it struck him in the manner and at the time he indicates, the noise necessarily incident to its movement would of necessity be heard for a considerable distance at that quiet hour of the night.  Nevertheless the plaintiff's driver, on whose testimony he rests his case, testified as follows: "Q. After stopping some twenty or twenty-five feet, did you stop again before you got to the track?  A. No, sir. Q. Did you look again before you got to the track after you made that one stop?  A. No, sir.  Q. Did you listen again after you made that one stop until you got to the track?  A. I did not have time to listen.  Q. At that distance, twenty-five feet away, you proceeded straight on without stopping, looking or listening?  A. Yes, sir.  Q. Is that right?  A. I had no reason to listen.  I had already stopped for that purpose."

Had this driver, after he had stopped, looked and listened at the point he described, physically closed his eyes and plugged his ears, and then driven on to the railroad track and thus met with the accident he described, no one would deny that his own negligence had contributed to his injury.  Preoccupation of the mind or an idle wandering of the faculties, resulting from weariness, drowsiness or other like cause, often leads to a temporary suspension of the functions of sight and hearing as completely as if the eyes had been actually closed or the hearing obstructed.  There is high authority for the proposition that they who have eyes but see not cannot escape responsibility.

This case, like every other of its class, presents its own peculiar facts.  But the controlling principle has been

clearly stated in Myers v. Railroad Co., 150 Pa. 386; Urias v. Railroad Co., 152 Pa. 326; Gangawer v. Railroad Co., 168 Pa. 265, and kindred cases.

The driver knew the crossing was dangerous, not only generally as are all grade crossings, but specially because of the curve which, to the eastward, cut down the view of an approaching train to a few hundred feet. He had been warned that a train was in the vicinity because he heard the engine bell. He so declares. If so, it is not of much consequence whether he heard the whistle or not as both are operated for the single purpose of giving warning of the approaching train. It may be that the curve so deadened the sound of the bell that at the point and moment he stopped, he did not hear it. But this did not warrant him in dismissing the warning he had received and driving on the track oblivious of what both eyes and ears must have revealed had he used them. As was said by Mr. Justice Dean in Gangawer v. Railroad Co., 168 Pa. 265, "previous care in stopping does not absolve from subsequent negligence, any more than care at a crossing one day will dispense with care the next."

Applying the principles of these cases to the facts before us, we cannot reach any other conclusion than that the learned court below was right in entering the nonsuit and refusing to take it off.

We have examined with care the cases cited by the learned counsel for appellant, particularly Armstrong v. Penna. R. R. Co., 212 Pa. 228. The facts of these cases, however, differentiate them from the one now before us, and none of them, as we view them, conflicts with the conclusion we have reached.

Judgment affirmed.