Jester, Appellant, *v.* Philadelphia, Baltimore & Washington R. R. Co.

*Negligence—Railroads—Automobiles—Collision—Stop, look and listen—Grade crossing—Contributory negligence—Sudden danger —Confusion of driver—Law or fact—Case for jury—Nonsuit.*

1. A nonsuit can be entered only in clear cases, when it is inconceivable on any reasonable hypothesis that a mind desiring solely to reach a just and proper conclusion in accordance with the relevant governing principles of law, after viewing the evidence in the light most advantageous to plaintiff, could determine in his favor the controlling issue involved.

2. When the standard of care shifts with the circumstances, the jury ordinarily must determine what it is, and if it has been observed.

3. In an action against a railroad company to recover damages for personal injuries sustained in a collision at a grade crossing, the trial court is in error in not submitting the case to the jury, where the evidence tends to show that the approach to a three-track system of defendant's tracks at the crossing was up a slight incline; that plaintiff stopped, looked and listened at a point, when the front of his car was two or three feet from the first rail, and his seat in the car was nine feet back from the front; that from this point he looked in both directions; that he could see to the right only 600 to 700 feet, because, according to his testimony, his view was obstructed by a small watchman's box about 400 feet from him, and other obstructions, such as a station, telephone poles, bridge and "different things," whose distance he did not locate; that, neither seeing nor hearing the approach of a train, he drove his car over a narrow roadway composed of loose ballast, to the first track; that the car front was about the middle of this track, when he saw the train about 50 feet away on the second track traveling from the right towards him at a speed of 50 to 55 miles an hour; that before he could stop, the engine struck the car throwing it to the south, the direction from which he was traveling, demolishing it and injuring him; that as the car advanced towards the track, plaintiff's attention was largely taken up with getting the car under way and keeping on the road, and that his view was increased very little in the approach, not over 25 or 50 feet, according to his testimony.

4. In such a case, the court, taking into consideration the grade, width and composition of the roadway, the vehicle to be driven, the precautions which plaintiff had taken, the difficulty of stopping a car on loose stones and ballast within two or three feet of the tracks on which a train was approaching,—causing bewilderment of mind,—cannot say that plaintiff was guilty of contributory negligence because he did not stop with the front of his car in the middle of the first track, so that he might get a clear view of such track.

5. Nor could the court say as a matter of law that the objects intercepting the view were so located that plaintiff must have seen the train approaching from a sufficient distance to have avoided a collision.

Argued January 6, 1920.    Appeal, No. 18, Jan. T., 1920, by plaintiff, from order of C. P. No. 2, Phila. Co., March T., 1916, No. 2802, refusing to take off nonsuit, in case of James Jester v. Philadelphia, Baltimore & Washington Railroad Company.    Before BROWN,

C. J., MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ.   Reversed.

Trespass for personal injuries and for injuries to automobile.   Before ROGERS, J.

The facts are stated in the opinion of the Supreme Court.

At the trial the court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*Michael D. Hayes,* with him *Wm. H. Wilson* and *Francis M. McAdams,* for appellant.—The case was for the jury: Benner v. P. & R. R., 262 Pa. 307; Knepp v. B. & O. R. R., 262 Pa. 421; Wengert v. P. & R. R., 262 Pa. 21; Schwarz v. Del., L. & W. R. R., 211 Pa. 625; Kobylis v. P. & R. R., 261 Pa. 350; Wanner v. P. & R. R., 261 Pa. 273; Centofanti v. P. R. R., 244 Pa. 255.

*Sellers & Rhoads,* for appellee, submitted printed briefs.

OPINION BY MR. JUSTICE KEPHART, March 22, 1920:

This is an appeal from an order refusing to take off a compulsory nonsuit.   Appellant was injured and his automobile destroyed in attempting to pass over the appellee's tracks, where they intersected Second street, in the Borough of Fernwood.   The approach to the tracks is up a slight incline.   The court below believed appellant was guilty of contributory negligence in committing his car to the crossing when he had a clear view of the track for a distance sufficient to enable him to avoid the injury.

We have carefully examined the testimony; it presents a very close case.   After giving the plaintiff the benefit of every inference fairly deducible from the evidence, we are led to the conclusion the case should have been submitted to the jury.   We have frequently said a

nonsuit can be entered only in clear cases, when it is in-conceivable on any reasonable hypothesis that a mind desiring solely to reach a just and proper conclusion in accordance with the relevant governing principles of law, after viewing the evidence in the light most advan-tageous to plaintiff, could determine in his favor the controlling issue involved: Virgilio v. Walker & Brehm, 254 Pa. 241.   It is not denied that plaintiff stopped, looked and listened.   When he stopped, the front of his car was two or three feet from the first rail of appellee's three-track system, and his seat in the car was nine feet back of the front.   From this position he looked in both directions.   The track to the left could be seen for 1,500 to 1,800 feet, and to the right 600 to 700 feet.   Neither seeing nor hearing the approach of a train, he drove his car over a narrow roadway composed of loose ballast, to the first track.   The car front was about the middle of this track, when he saw appellee's train about fifty feet away on the second track traveling toward him at a speed of 50 to 55 miles an hour.   He could not stop to avoid the collision, the engine struck the car, throwing it to the south, the direction from which he was travel-ing, demolishing it and injuring appellant.   Appellant's reasons for not being able to see further to the right when the car was stopped were: "There is a watchman's box in line with the view, sitting where I was, and also the railroad station.   There is a walk, a bridge, that peo-ple, instead of people walking across the railroad, walk over the top, and different telephone poles, and different things of the company"; as the car advanced toward the track, his attention was largely taken up with getting the car under way and keeping on the road; but his view was increased very little in the approach, not over 25 or 50 feet, so he testifies.   The evidence of a former trial was read; therein appellant stated that as he came nearer to the tracks he could see further down, to the right; and when the first track was reached he could see a considerable distance, possibly half a mile.   This state-

ment was qualified or explained, in the present trial, to the effect that, before this extended view could be obtained, the front of the automobile would have to be in the center of the first track. His explanation as to his inability to see a greater distance than 600 or 700 feet was not so contradicted by his own statements as to place the case in a position where the court could say as a matter of law, that the objects intercepting his view were so located that he must have seen the greater distance and observed what was plainly in view. The watchman's box, a small building, 8 x 8, and 8 to 10 feet high, was 400 feet from him; it is inconceivable that a building of this size, at the distance given, prevented a view of a perfectly straight piece of track of over a mile in length; but he did not locate the other obstructions, station, telephone poles, bridge and "different things," so as to determine whether they really interfered with his vision.

Having taken due precaution within the range of vision testified to, considering the character and width of the roadway, and the difficulty in starting his machine and keeping in the roadway, we cannot say, as a matter of law, he was guilty of contributory negligence because he did not stop with the front of his car in the middle of the first track so that he might get a clear view of the track—conceding this was the only place it could be obtained. Apart from the fact that this was a busy main line track, it would be requiring too much of the drivers of motor vehicles to thus accurately gauge the exact place where the vehicle should stop. The margin of safety between this point and the next track on which the train would approach, with the well-known difficulty of stopping a car traveling over loose stones and ballast, within two or three feet of a track on which a train is moving or approaching, causing bewilderment of mind, are considerations which must be given due weight in determining whether proper care was exercised by the driver. Ordinarily 600 or 700 feet would be a sufficient

distance for one to be apprised of the approach of a train and take due precaution for safety. We cannot say the driver should have seen and avoided the train, because it came into view within the distance named and covered this space in about seven seconds. He says his view on approaching the track was extended very little until he reached the centre of the first track. This we have discussed. True, it was his duty to continue to look: Walsh v. Penna. R. R., 222 Pa. 162; but the grade, width and composition of the roadway, the vehicle to be driven and the other circumstances developed by the evidence, must be given due weight in determining this question, and taken into consideration with the distance and time mentioned. When the standard of care shifts with the circumstances, the jury ordinarily must determine what it is and if it has been observed: Thorne v. Phila. Rapid T. Co., 237 Pa. 20. Under the testimony as developed, these questions were for the jury: Shaffer v. Penna. R. R., 258 Pa. 288.

Judgment reversed with a procedendo.